Good morning, Your Honors. May it please the Court, my name is Ron Berrick, and I'm accompanied by Donald Peppermint and Taylor Wagner of Bleacher, Collins, and Wagner. We represent plaintiff appellants and are honored to be before this panel today. I would like to reserve two minutes for response. This is a de novo review of three erroneous rulings on the part of the Court below, reached without any hearing whatsoever. Can I ask you what statute you're seeking relief pursuant to? Well, we're seeking relief with respect to the finding of a lack of standing, and we are seeking relief. What is the jurisdiction? What statute of the United States is violated here? I assume you invoked Section 1983, which deals with the deprivation of any rights, privileges, or immunity secured by the Constitution and laws. That's correct. And which is it? I'm sorry, I don't understand. 1983 provides a cause of action, I'm not reading the whole thing, for violation of the rights secured by the Constitution and laws of the United States. What rights secured by the Constitution and laws of the United States has been violated here? The foreign affairs power of the Constitution of the United States? That's a right secured to a citizen? There's two questions, Your Honor. One has to do with standing, which has nothing to do with the nature of the claim, but is dependent on the injury. Well, that's a separate question. I agree with you, but I want to know what right that's guaranteed by the Constitution and laws of the United States was your client deprived of? Which provision, which law, and which provision of the Constitution violated your client's rights? The conduct of Glendale in opposition to the foreign affairs power under the U.S. Constitution. I believe they have a right to assert that if they have standing. Pursuant to what statute? I don't think it's necessarily pursuant to a statute. So you're saying it's derived from the Constitution itself? Yes. And I think both Crosby and Garamendi support that conclusion. Those are both cases where individual plaintiffs were entitled to assert foreign affairs power. They were found to have standing and they proceeded to a result in which the conduct complained of was stricken under the foreign affairs power of the U.S. Constitution. In any event, we complain of three acts by the court below. First, dismissing the case for lack of standing. Second, then assuming hypothetical jurisdiction and dismissing under 12b-6 for failure to state a claim. Third, affording plaintiff no opportunity to amend on the rationale that to do so would have been futile. Plaintiffs respectfully ask this court to find both standing and sufficient plausible foreign affairs preemption and to remand with instructions to allow plaintiff to proceed to discovery. At a minimum, the case should be remanded with leave to amend. And what's a maximum? Pardon? What would a maximum be? You said that's a minimum. Well, the maximum would be to remand with instructions to proceed to discovery. The court below found that there was no standing for you to pursue these claims. Correct. But then it went on to discuss the merits and say you failed to state a claim. Do you claim that that's error two, or to have gone on? I claim it's error in two respects. One, the court going on to discuss that was hypothetical jurisdiction, which is inappropriate in and of itself. But beyond that, I think on the merits, the court was wrong about its conclusion about whether a claim has been stated here under 12b-6 with sufficiency to proceed beyond the 12b-6 motion to dismiss. If we were to conclude that the district court erred in its standing rulings, would we be able to reach the merits ourselves? Or would we just remand? I think with respect to a 12b-6 motion, this panel would be able to decide that there was a sufficient showing of plausibility to remand and proceed to discovery without sending us back to have a 12b-6 motion to dismiss where the court below has already set how it's going to rule. Logically, if the court says it doesn't have standing, it shouldn't have reached the merits. But if we say it does have standing, that discussion should be void. So if we say there is standing, we don't have anything to review. My understanding is that this Ninth Circuit court can address whether or not this is a de novo hearing and can address whether or not there is a sufficient and plausible statement of claim to survive 12b-6. I'm not suggesting this panel should hear evidence on the ultimate outcome of the case. Defendant Glendale is dissatisfied with how the federal government has exercised its exclusive foreign affairs power to address a controversial dispute between two important foreign allies of the U.S., Japan and South Korea, by advocating conciliation and diplomacy. In contrast, Glendale attempted and attempts to trump such federal policy by permanently installing an 1,100-pound monument and plaque in Glendale Central Park that expressly castigates and condemns the Japanese for unproven war crimes. They also speak about Japanese victims as well. They do. And asking the present-day government of Japan to accept historical responsibility and apologize for those alleged crimes. The U.S. government has not done this. As such, neither should or can Glendale. Well, the U.S. government hasn't intervened here, hasn't written even a letter to Glendale, have they, saying that you're interfering with the conduct of American foreign policy? This is not a conflict preemption case, Your Honors. We are advocating field preemption. That is not necessary. But all the same, as Judge Wardlaw pointed out in her dissent in Von Sauer... You're always in trouble when you're quoting dissents. I know that. I know that. It's just I like the dissent better. She found federal policy where she found it, whether or not a letter was written. In that dissent, she pointed, among other things, to Ambassador Bell's public pronouncements on the relevant foreign policy. We have pronouncements by Ambassador Kennedy, by Secretary of State Kerry, and we also have a statement of interest filed in the Joe J.O.O. case that all reflect the kind of policy that would support field preemption, if not conflict preemption. There should also be no doubt of what Glendale's actions were designed to do. City Council Member Friedman publicly bragged on enactment of the ordinance that, quote, we really put the city of Glendale on the international map today. Emphasize international. In doing so, City Council Member Sinanian, a lawyer, expressly acknowledged that Glendale was acting in direct contravention of this court's Moffsesian decision. As well, Mayor Weaver, who was the lone dissent from the City Council vote, publicly stated on the record that the City Council's actions were inappropriate. It's also rather suspicious, at least to me, that Glendale City Council also failed to follow its own local municipal ordinance by not disclosing and voting on the inflammatory language it intended to set forth in the plaque. Had Glendale intended only a mere commemoration of comfort women, Sinanian would have had no reason whatsoever to acknowledge violating the Ninth Circuit law. Plaintiffs here are of Japanese descent. They have standing under Barnes-Wallace because they have suffered psychological injury leading to a loss of use and enjoyment of Glendale Central Park, including in particular its senior citizens' facility. It should be noted that Barnes-Wallace relied on environmental cases as well as establishment clause cases and allowed plaintiffs to proceed to trial on their equal protection claims. Plaintiff Mira also has municipal taxpayer standing under Kamek and Puente, Arizona, because he owns property in Glendale and he pays taxes to Glendale that are used to maintain and secure Glendale Central Park, including the challenged comfort women monument and plaque. Could I ask you, does he allege that he ever used this park? He does. It is alleged in the complaint. There is a paragraph, I think it might be paragraph 53 of the complaint, but it states that if the monument and plaque were removed by injunctive relief, the plaintiffs would, quote, again, close quote, use the park. Mr. Mira, I'm talking about. Yes. Turning briefly to the merits, in Mobsessian, the California legislature extended the statute of limitations for Armenian genocide victims. California argued that its actions were motivated by traditional insurance interest. The Ninth Circuit panel saw through that. Applying Garamendi and my favorite dissent of Judge Wardlaw and von Sauer, the Ninth Circuit en banc, which included Judge Reinhart, I don't want to leave him out, looked to the real purpose of California's statute of limitations extension, finding it to be an improper genocide foreign policy position of advocacy, contradicting the federal policy that favored war resolution. We have no less than genocide here. We have castigation and condemnation of the Japanese, urging in particular admission of guilt and apology, hardly just commemorative. I would like to also make a brief mention of the Alameda and Deutsch cases. In Alameda, Judge Reinhart pointed out, with which we have no quarrel whatsoever, that there is nothing in constitutional or statutory preemption law that precludes a local government from communicating with its citizenry. We're not suggesting otherwise. But as Judge Reinhart pointed out, in that case, the resolutions didn't regulate anything, didn't ask anyone to do anything or compel them or order them to do anything. It is also the case in Alameda that, instructive as it might be, it was mere dicta as to foreign affairs power, but as to the National Labor Relations Act, we had no preemption. That is a law that addresses collective bargaining. There was nothing in the Alameda case that went remotely near that. Judge Reinhart did make clear, at least to me, that if you had local governmental influence that was coercive, it would likely be inappropriate under foreign affairs preemption law. I took coercive to mean, in essence, breaking through the glass ceiling, if you will, of applicable federal policy. After finding standing in Alameda, and I want to emphasize, standing was found in Alameda, and we think it has to be found here as well. In Deutsch, it becomes a bit more clear, again, written by Judge Reinhart, that if you have coercive actions, it is inappropriate under foreign affairs preemption. I see my light is red, and I don't want to abuse it. You're over time already. Thank you. Thank you very much, Your Honors. Good morning, Your Honors. Christopher Muncy on behalf of Defendant, City of Glendale. In this case, the plaintiffs seek an unprecedented expansion of two separate bodies of law. To be clear, no case has ever found standing under facts such as those presented here, and to be clear, no case has ever found foreign affairs preemption under facts such as those presented here. To begin first with standing, in their briefs below, and just now in Mr. Barrack's argument, plaintiffs have hinged their standing argument entirely on this Court's decision in the Barnes-Wallace case. However, there are several factors that make Barnes-Wallace, as Judge Anderson found below, readily distinguishable. Most significantly, and in our view, independently dispositive of the issue, is that in the Barnes-Wallace case, the plaintiffs would have been forced to pay fees in order to use the public land at issue. And they would have had to pay those fees to the Boy Scouts, an organization that had explicit policies of exclusion and discrimination against the groups to which the plaintiffs in that case belonged. In addition to the payment of fees, the Court emphasized that the plaintiffs would have had to seek permission from, make their visits under the dominion of, and otherwise interact with the Boy Scouts, again a group that discriminated specifically against people like the plaintiffs. None of these facts are present in this case. But Barnes-Wallace even talked about the Establishment Clause cases where just, you know, you go out of your way to avoid going to a place where, for example, a religious cross is put, and that amounts to standing, constitutional standing. So how do you distinguish those cases? Same with our environmental cases, too. Enjoy the land. Well, I would distinguish first between what the Establishment Clause cases hold and what the environmental cases hold. If I can take them in reverse order, I believe what the environmental cases hold is that actual physical interruption with the enjoyment of public land can be sufficient for standing. So it's more than simply the disagreement with viewing the pollution. It's the actual effects of the pollution itself on the enjoyment of public land. So, for instance, in the Friends of the Earth case, there was, the allegations were that there was mercury contamination of the lakes at issue, and so plaintiffs had curtailed their swimming and boating activities. Similarly, in the Duke Power case. I still don't understand the difference. One is contamination, one is putting an object in the park, and one has a psychological effect on people so they don't use the park. The other would cause a physical injury, I guess, if they used the lake. What legal principle distinguishes that? Well, I believe that what the environmental cases stand for is the proposition that if there is actual interference with the use of land that causes plaintiffs to cease their enjoyment of that public land, that that can constitute injury in fact. That's different from simply the disagreement with seeing the... Well, but it's a change in the use of land. One, you say you're putting poison on the land. The other, you're saying you put an obstruction or a statue or whatever on the land that causes psychological, has a psychological impact on the individual. Well, the Supreme Court has been clear that the simple psychological effect of viewing the government violate the law, even the Constitution, is not sufficient for standing. So without the interference in the use of the land, the actual interference in the environmental cases, standing likely would not have lied. And then by contrast, in this case, there is no exclusion from the land. There is simply a voluntary decision not to use the public park, despite the fact that there is no actual interference with the use of the public park. And to turn to Judge Wardlaw's question about the Establishment Clause cases, the distinction there is that the Establishment Clause deals with a unique and specific injury, a spiritual harm to the plaintiff, which is not a lower standard. The Supreme Court was clear in the Valley Forge case that it's not a lower standard, but it is simply a different form of harm from just viewing a violation of the law. Still a harm. See, and they allege that having the monument there diminishes, I guess, one of the plaintiff's ability to enjoy the park because it's so offensive to his views. But to be clear, Your Honor, if the injury alleged was simply witnessing the monument and witnessing its purported interference with the foreign affairs power, that would not be sufficient injury. No, that's not. But instead, you're depriving him of his full enjoyment and ability to use the park. Correct, Your Honor. And we would submit that the reason why that particular injury is cognizable in the Establishment Clause context is because what is being avoided is a specific spiritual injury and not simply offense at the government's alleged violation of law or the Constitution. To be clear, no cases outside of the Establishment Clause context have applied this sort of voluntary exclusion from land principle.  But as I explained, there are significant additional factors in Barnes-Wallace that simply are not present in this case, most significantly the requirement of payment of fees. Can I go back to a question that I asked that sort of occurred to me as I was preparing for the third or fourth time for the arguments this morning about the jurisdictional statute here is 1983? That's correct, Your Honor. What provision of the federal constitutional right has he been deprived of? Assuming everything he says is so, that he would have used the park, even though he doesn't live in Glendale, and let's assume all of that shows injury, from what constitutional right that 1983 provides a cause of action for has he been deprived of? Your Honor, assuming everything, I still don't believe there would be an action under 1983. I do believe they can, however, assert a declaratory relief action separately, and that is what happened in the Crosby and Garamendi cases. But I agree with you that, as you have stated, there is no content to 1983. And we do not believe a violation of the foreign affairs power is cognizable under 1983. So on what basis? I mean, first of all, declaratory judgments are a matter of discretion. On what basis would he get a declaratory judgment if his constitutional rights were not being violated, if no constitutional right of his was being violated? Well, certainly we don't concede and we would dispute that any individual right exists under the foreign affairs power. These are just sort of the general investments. I think the Supreme Court said, with respect to the supremacy clause, that there was no preferred cause of action just because the supremacy clause was violated. I mean, I'm just trying to understand what provision of the Constitution, what constitutional right of his was violated. I think Your Honor is absolutely correct. There is no individual right under the supremacy clause by itself. And we certainly would agree that there is no individual right created under the foreign affairs provisions to which plaintiffs have referred. And how do you distinguish Crosby and Mufessian? Mufessian. Well, in terms of the Judge Corman's question, I do believe that those were declaratory relief actions where the plaintiffs were facing regulatory enforcement schemes that were going to affect their rights, create remedies, create obligations. That goes beyond the question of the asserting a right under the foreign affairs clause. Well, again, I think that it appears from the case law that the foreign affairs power can be used, as in those cases, essentially as a defensive mechanism against government enforcement or interference with a plaintiff's actions. But that is not to say that the Constitution, those constitutional provisions, the commander-in-chief clause, the treaty clause, and so forth, create an individual right that is, for instance, cognizable under Section 1983. Well, I'm still not sure how you distinguish them. I'm not suggesting that they're correct, other than the ones from the Supreme Court and the ones from the Ninth Circuit. You get at least one of them must be correct. But those are cases where you say that it leads to an economic injury or some practical consequence, unlike the emotional harm here. But that's really a different argument from whether you can base your claim on the violation of the foreign affairs clause. I don't know how you distinguish those two. I can think of something to say about it, but it's complicated enough without my theory. But I don't know how you get around saying that you can base some kind of a suit on the foreign affairs clause. Well, I do think that those were cases where the plaintiff was seeking declaratory relief, that regulatory and coercive legislative schemes were unconstitutional under the foreign affairs power, which we believe is a far cry from challenging the expressive speech at issue here. But that is certainly a distinction between a declaratory relief action and, for instance, a 1983 claim, which we certainly believe is not cognizable under the foreign affairs. Well, I assume they've got a clause. I haven't looked, but which presents it for the relief as maybe proper or something. Yes, Your Honor. The plaintiffs here are seeking solely declaratory and injunctive relief. Turning now, if I may, to the merits. Can I just add something that's unclear to me? Why did Glendale put up this monument? Does it have a relationship with South Korea or a sister city? Is that what it is? Yes, Your Honor. Glendale has a significant Korean-American population. It is sister cities with Seoul, South Korea, and possibly another South Korean sister city. And essentially it was responding to the will of its citizens to commemorate these historical events, which, again, as we say in our briefs multiple times, the plaintiffs concede the historical accuracy of those events. You're getting the merits. Do you think we can reach the merits in any way? As a technical matter, I'm not sure that's what the law provides. However, I think as a practical matter, these are pure issues of law. The case is fully briefed. Judge Anderson provided a thoughtful and lengthy opinion, so his thoughts are, I think, known to the court. We have a rule that says that we wouldn't have jurisdiction to reach matters that could not have affected the outcome or are not material to the outcome. And basically what Judge Anderson did was say he has no jurisdiction. So anything after that does not affect that outcome. That is, I think, technically correct. And so then we would not have jurisdiction over that. If we decide that there's standing, we would have to send it back to him again, I think. I don't know what my colleagues think. I would agree with you, Your Honor. I think that is the technical rule, yes. That would preclude dictum and opinion. Yes. You know, it always makes me uncomfortable when somebody says it's a technical rule. It's usually the prosecution talking about a violation of the Constitution when they say that's a technical violation. But it's, I mean, practically, yes. It doesn't seem to accomplish much to remand it, have Judge Anderson reissue his decision, then have it come back immediately. But I would be happy if either of you could explain to us how we can reach the next issue. But generally, if we don't have jurisdiction, I mean, I suppose you could say it was a motion to dismiss and we can affirm on any ground that was reached, but I'm not sure that's true after you decide that there's no jurisdiction. If we decide there was jurisdiction, can we then reach the next issue? We'll just have to figure it out. It would certainly save everybody a lot of time. That is correct, Your Honor. And I believe that's likely what Judge Anderson had in mind. I see that I am out of time. Thank you very much. Thank you. Thank you. Well, you're out of time, but we'll give you another minute. Pardon? You are out of time, but we'll give you another minute. Oh, okay. I will be very brief. At the end of the day, Barnes-Wallace controls standing. A panel, three-judge panel, doesn't, I believe, have authority to change that decision. Counsel referred to fees to get into Barnes-Wallace, but in fact they hadn't gone into Balboa Park and they hadn't paid any fees and they still had standing. Dr. Mira has paid taxes to maintain that monument that he finds offensive. Counsel says that there's no case. Is it the monument or the plaque? It's a monument and a plaque. It's all cemented together. It's big. It's huge. I thought I read somewhere that the plaque itself was not provided for by Glendale as opposed to the monument. I mean, I don't know. Is that correct? No, it's not. It's Glendale's monument and plaque. I just want to quickly make two points. Counsel has said there is no case like this. There is no case on expressive conduct like this. Crosby and Garamendi are absolutely identical, except it was regulation. If you look at Pleasant Grove and if you look at Alameda, it's clear that offensive expressive language can violate the foreign affairs power just as much. If that were not true, and in their papers, counsel argues non-regulatory expressive conduct gets a free pass. If that was so, Glendale could put up a monument and plaque in Glendale Central Park that would say Jerusalem is the capital of Palestine, and Israel, you should man up and admit that and accept that. That would not fly. Plaintiffs would come in, and that would be found to violate the foreign affairs power of our Constitution. You're right up to the point where plaintiffs would come in, but the issue is whether they would prevail as a separate story. I understand, but, Judge Corman, you and I may have a fundamental difference of whether foreign affairs power can be asserted by a private party. I think it can. I don't think there's a difference between regulation and coercive expression. I have just one quick general household cleaning chore. Plaintiffs believe the Global Alliance for Preserving History of World War II, their amicus brief on comfort women history, is irrelevant to this case, unsupported by competent evidence, and wholly inaccurate. If this court wishes to consider that brief, plaintiffs would like this panel's permission to file a supplemental brief responding to the global brief at the panel's convenience before the panel decides this appeal. Thank you very much. Thank you both very much. The case just argued will be submitted, and the court will stand in recess for the day.
judges: Reinhardt, Wardlaw, Korman